UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
REMOND DESIR, : : : : : : : : : : : : : : : : : : : :

                    Plaintiff,

        -against-

WENDELL I. AUSTIN, LOGAN LYNN WRAY
and LYNN TRUCKING,

                    Defendants.
--------------------------------------------------------- X
WENDELL I. AUSTIN, LOGAN LYNN WRAY
and LYNN TRUCKING,

                    Third-party Plaintiffs,

        -against-

RAY'S RAPID TRANSPORTING LLC and
REMUSAT CLAUDE THEBAUD,

                    Third-party Defendants.
--------------------------------------------------------- X

**MEMORANDUM AND ORDER**

13 CV 912 (VMS)[1]

**VERA M. SCANLON, United States Magistrate Judge:**

This is a personal injury action arising out of a motor vehicle accident and is before this

Court on the basis of diversity jurisdiction.  Before the Court is Third-party Defendants Ray's

Rapid Transporting, LLC ("Ray's Rapid") and Remusat Claude Thebaud's ("Thebaud")

(collectively, "Third-party Defendants" or "TPDs") motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  For the reasons stated herein, Third-party Defendants'

motion for summary judgment is **denied**; however, **Florida's loss allocating law will apply**.

---

[1]        The parties have consented to my jurisdiction for all purposes.  See ECF No. 38.

# I.    BACKGROUND

### a.    Procedural History[2]

The instant action arises from a motor vehicle collision in Florida involving Plaintiff Remond Desir ("Plaintiff") and Defendant Wendell I. Austin ("Austin"), who at the time of the accident was operating a vehicle and trailer owned, respectively, by Defendants Logan Lynn Wray ("Wray") and Lynn Trucking. <u>See</u> Complaint, ECF No. 1.  On August 22, 2013, Austin, Wray and Lynn Trucking (collectively, "Defendants," "Third-party Plaintiffs" or "TPPs") filed a Third-party Complaint against Rapid Ray's, Plaintiff's employer, and Thebaud, who was operating the vehicle in which plaintiff was a passenger when the accident occurred, alleging comparative negligence and seeking common law contribution and indemnification. <u>See generally</u> Third-party Complaint, ECF. No. 7.

Discovery between the parties subsequently commenced, and a discovery schedule was set. <u>See</u> November 21, 2013 Order, Un-numbered ECF Entry.  Following several extensions of the discovery and dispositive motion-practice deadlines, I directed that any motions for summary judgment be initiated by May 1, 2015, in accordance with the Individual Rules of the Honorable Dora L. Irizarry, who – at the time – presided over all dispositive matters. <u>See</u> February 3, 2015 Order, un-numbered ECF entry.  Due to subsequent extensions to the expert-discovery schedule, on April 24, 2015, I issued a revised scheduling order that set a deadline of June 8, 2015 for the parties to initiate any summary judgment motion practice. <u>See</u> April 24, 2015 Order, un-numbered ECF entry.  This revised scheduling order granted the parties their "4th or 5th request for an extension" of the pretrial deadlines. <u>See</u> ECF No. 28.

---

[2]    Facts relating to the procedural history of the case are taken from the docket.

After the June 8, 2015 deadline expired without any party initiating dispositive motion practice, Third-party Defendants sought to modify the scheduling order to extend the deadlines to move for summary judgment.  See ECF No. 31.  On June 29, 2015, District Judge Irizarry granted Third-party Defendants' motion insofar as the deadline to initiate dispositive motion practice was extended to July 6, 2015.  See June 29, 2015 Order, un-numbered ECF entry.  On July 6, 2015, rather than initiating dispositive motion practice, Third-party Defendants filed another extension request.  See ECF No. 31.  Finding that Third-party Defendants did not establish good cause for their failure to comply with the June 8, 2015 and July 6, 2015 deadlines, District Judge Irizarry denied their request to modify the original schedule order, thus foreclosing their opportunity to move for summary judgment.  See generally ECF No. 33.

On August 26, 2015, the parties consented to my jurisdiction for all purposes.  See ECF No. 38.  On August 27, 2015, a conference was held, during which a trial date and briefing schedule for the parties' motions in limine were set.  See ECF No. 39.  The motions in limine schedule specifically included dates by which the parties would brief whether New York or Florida's loss allocating laws should apply at trial.  Id.  No party raised the prospect of moving for summary judgment.  Id.

Pursuant to the briefing schedule set during the August 27, 2015 conference, Third-party Defendants served a motion for summary judgment, not a motion in limine, on October 2, 2015.  See ECF No. 41.  Plaintiff and Third-party Plaintiffs served their opposition papers on October 22, 2015, and October 23, 2015, respectively, see ECF Nos. 42-44, and Third-party Defendants served their reply papers on November 6, 2015.  See ECF No. 45.

In sum, Third-party Defendants seek a declaration from the Court that Florida's loss-allocating statute, Fla. Stat. § 768.31 (2015), applies to the contribution and indemnification

claims made by Third-party Plaintiffs and that summary judgment be granted in their favor as a result.

### b.    The Parties' 56.1 Statements

Rule 56.1(a) of the Local Civil Rules of the Eastern District of New York requires a party moving for summary judgment to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  The responses by the non-moving party which attempt to "controvert any statement of material fact" asserted by the moving party must be supported by "citation to evidence which would be admissible" as required by Federal Rule of Civil Procedure 56(c).  Local Rule 56.1(d). "If the opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).  Here, Third-party Defendants failed to properly file a statement in compliance with Local Rules 56.1(a) and (b), respectively.

Third-party Defendants submitted a 56.1 Statement containing fourteen paragraphs.  See ECF No. 41, Attachment #4.  The crucial "facts" which they use to support their argument that Florida law should apply (i.e., the domiciles of Plaintiff and Thebaud), though, are not found within their 56.1 Statement.  Rather, Third-party Defendants describe the "facts" underlying these claims in their counsel's "Affirmation in Support," which, inter alia, describes this matter's

procedural history and recounts the substance of several depositions. See TPDs' Affirmation in Support ("TPDs' Aff."), ECF No. 41, Attachment #1.[3]

Third-party Plaintiffs properly responded to Third-party Defendants' 56.1 Statement, and they also submitted their own statement of additional facts pursuant to Local Rule 56.1(b). See ECF No. 44, Attachment #4. Third-party Defendants, in turn, failed to respond to Third-party Plaintiffs' statement of additional facts. See generally TPDs' Reply Memorandum of Law, ECF No. 45.

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). Altogether, counsel filed more than one thousand pages of documents, including exhibits, in support of their respective arguments. It is not this Court's responsibility (although it undertook it as necessary), particularly when all parties are represented by counsel, to sift through the motion papers in an attempt to determine which material facts are undisputed and what evidence exists to support each parties' claim. See Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("The purpose of [Local Rule 56.1], and counsel's compliance with the same, is to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination.").

Typically, "[f]ailure to provide a responsive 56.1 statement usually means that the material facts in the [opposing] party's 56.1(a) statement are deemed admitted as a matter of

---

[3] Similarly, although Plaintiff substantively opposed the motion, he did not submit a counter-56.1 statement. Like Third-party Defendants, Plaintiff's counsel filed an "Affirmation in Opposition," which contains subheadings entitled "Counter-Statement of Procedural History," "Facts" and "Legal Argument," only parts of which are supported by citations to evidence. See Plaintiff's Affirmation in Support ("Pl's Aff."), ECF No. 42.

law." Booth v. Melville, 14 Civ. 7022 (CM), 15 WL 7730931, at *1 (S.D.N.Y. Nov. 24, 2015) (citing Local Rule 56.1(c)); see T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  In this case, this general rule is complicated by the inclusion of the third-party action, such that two parties, rather than one, opposed Third-party Defendants' motion, with only one party (Third-party Plaintiffs) filing a 56.1 counter-statement.

In Lopez v. Echebia, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010), the Court found that because the mistakes made by one party in filing a Rule 56.1 statement did not "create[] a difficulty for the court," it would not hold the party to the strict requirements of the rule. Although Third-party Defendants' errors are formalistic in nature, they have certainly created difficulty for this Court, particularly because there are three parties and thus, three sets of motion papers.  Nonetheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001).  In my discretion, I will "look past such filing failures," Derienzo v. Metro. Transp. Auth., 404 F. Supp. 2d 555, 557 n. 3 (S.D.N.Y. 2005), and review all of the parties' arguments, the facts on which they rely, and the evidence supporting same.

### c.     March 2, 2011 Motor Vehicle Accident

According to Plaintiff, at the time of the motor vehicle accident, Plaintiff owned Ray's Rapid, a company which transported vehicles to and from car dealerships.  See TPPs' 56.1 ¶¶ 2-3.  In line with his business, Plaintiff hired Thebaud to drive a freightliner truck to transport vehicles from Georgia to Florida.  See TPPs' 56.1 ¶ 5.  During the drive, Plaintiff – who was a passenger in the freightliner – became tired and went to the sleeper section of the vehicle.  See

TPPs' 56.1 ¶¶ 6-7.  With Plaintiff in the rear, the freightliner truck collided with Austin, who was operating a Mack dump truck owned by his employer, Lynn Trucking, on Interstate 75 in Florida.  See TPPs' 56.1 ¶¶ 10-11, 12, 15.  In essence, the parties blame one another for the accident.  Third-party Defendants and Plaintiff claim that Austin negligently pulled on to the interstate from the shoulder and made contact with the front right corner of Plaintiff and Thebaud's freightliner.  See TPDs' Affirmation in Support, ECF No. 41, Attachment #1 ¶ 23; Plaintiff's Affirmation in Opposition, ECF No. 42 ¶ 7.  According to Defendant/Third-party Plaintiffs, the collision was the result of Thebaud rear-ending Austin's vehicle.  See TPPs' 56.1 ¶¶ 13-20.

## II.     LEGAL STANDARD

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Kwong v. Bloomberg, 723 F.3d 160, 164-65 (2d Cir. 2013); Redd v. N.Y. Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  The "mere existence of a scintilla of evidence" is not enough to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-moving party]."  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted); see Anderson, 477 U.S. at 252.  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a

rational juror could find in favor of that party." <u>Pinto v. Allstate Ins. Co.</u>, 221 F.3d 394, 398 (2d Cir. 2000).

## III. DISCUSSION

### a. Summary Judgment is Denied

Both Plaintiff and Third-party Plaintiffs argue that Third-party Defendants should not be permitted to move for summary judgment because their request to do so was denied by District Judge Irizarry. <u>See</u> July 28, 2015 Order, ECF No. 33. Third-party Defendants assert that even if they are not permitted to move for summary judgment, their motion should be considered as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as District Judge Irizarry never addressed the propriety of such a motion in her ruling.[4]

Pursuant to Fed. R. Civ. P. 56(b), a party may file a motion for summary judgment at any time until thirty (30) days after the close of discovery, "[u]nless . . . the court orders otherwise." Here, Third-party Defendants failed to adhere to the Court's scheduling orders, even after being granted numerous extensions of time in which to do so. Although the parties subsequently consented to my jurisdiction for all purposes, I will not disturb District Judge Irizarry's prior ruling that Third-party Defendants failed to establish good cause for their failure to comply with the Court's deadlines and thus are not permitted to move summary judgment. <u>See</u> <u>Fry v. Hartford Ins. Co.</u>, 09 CV 6669 (CJS), 2011 WL 1672474, at *3 (W.D.N.Y. May 3, 2011) (striking summary judgment motion filed beyond the deadline set by scheduling order where no good cause was shown); <u>Jackson v. Goord</u>, 06 CV 6172 (CJS), 2013 WL 1560204, at *5-6 (W.D.N.Y. Apr. 10, 2013); <u>Stover v. Northland Grp., Inc.</u>, 05 CV 476 (JTE), 2007 WL 1360603,

---

[4] Third-party Defendants incorrectly characterize a motion for judgment on the pleading as being governed by Fed. R. Civ. P. 12(b)(6).

at *2-3 (W.D.N.Y. May 8, 2007) (dismissing summary judgment motion filed after deadline where no good cause was shown).

In addition, Third-party Defendants will not be permitted to circumvent District Judge Irizarry's ruling by characterizing their summary judgment motion as a motion for judgment on the pleadings; in either event, Third-party Defendants seek dispositive rulings from the Court. Moreover, my April 8, 2015 scheduling order – one of many from which the parties ultimately sought, and were granted, an extension – set a deadline for "any <u>dispositive motion practice</u>," which included a motion for judgment on the pleadings, not just a summary judgment motion. <u>See</u> April 8, 2015 Order, un-numbered ECF entry (emphasis added).

Accordingly, Third-party Defendants' motion for summary judgment, or in the alternative, judgment on the pleadings, is **denied**. Because the parties were permitted to brief the choice-of-law question as a pre-trial motion <u>in</u> <u>limine</u>, the Court will construe Third-party Defendants' motion as such.

### b.   **Choice of Law**

#### 1.  **Preliminary Matters**

Because federal courts sitting in diversity apply the substantive law of the state in which it is sitting, I apply New York's choice-of-law rules.  <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>IBM v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 143 (2d Cir. 2004). Under New York's choice-of-law analysis, "the first step . . . of [the] inquiry is to determine whether there is an 'actual conflict' between the laws invoked by the parties." <u>Booking v. Gen. Star Mgmt. CoP.</u>, 254 F.3d 414, 419 (2d Cir. 2001); <u>International Bus. Machs. Corp. v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict.").  "If such a conflict exists

in a tort case, the court must then apply an 'interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation.'" Youngman v. Robert Bosch LLC, 923 F. Supp. 2d 411, 416 (E.D.N.Y. 2013) (quoting Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521 (1994)).

"Performing that interest analysis requires the court to identify the type of rules that are in conflict." Youngman, 923 F. Supp. 2d at 416. "If the conflict involves rules that regulate conduct, New York law usually applies the law of the place of the tort ("lex loci delicti")." Id. (citing Allianz Ins. Co. v. Otero, 353 F. Supp. 2d 415, 423 (S.D.N.Y. 2004)); see Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999). "[I]f the conflict involves rules that allocate loss — that is, rules that prohibit, assign, or limit liability after the tort occurs — the court must apply the principles set forth in Neumeier v. Kuehner, 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), which take into account the domicile of the parties, the conduct at issue, and the purposes of the applicable substantive law." Youngman, 923 F. Supp. 2d at 416 (citing Padula, 84 N.Y.2d at 522).

Under New York law, "two or more persons who are subject to liability for damages for the same [injury] . . . may claim contribution among them whether or not an action has been brought . . . against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. In other words, "New York has a system of joint and several liability whereby a single defendant can be fully liable for the entire amount of the plaintiff's damages even if other parties contributed to those damages." Lamensdorf v. New York Univ., 10 Civ. 3462 (JSR), 2010 WL 4967824, at *3 (S.D.N.Y. Nov. 30, 2010).

Unlike New York, Florida has abolished joint and several liability such that a given defendant can only be liable for her equitable share of liability. See Fla. Stat. § 768.81.

Specifically, with respect to negligence actions, "Florida's comparative fault statute states that '[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.'" <u>Maguire v. Demos</u>, 10 CV 782 (SCB), 2012 WL 859605, at *2 (M.D. Fla. Mar. 12, 2012) (quoting Fla. Stat. § 768.81(3) (2011)). "In order to allocate any fault to a nonparty, a defendant must affirmatively plead this fault and prove it at trial 'by a preponderance of the evidence.'" <u>T & S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc.</u>, 11 So.3d 411, 412 (Fla. 2d DCA 2009) (quoting Fla. Stat. § 768.81(3)(a)). "The current version of § 768.81 has essentially rendered a third-party complaint for contribution in a negligence action obsolete." <u>Maguire</u>, 2012 WL 859605, at *2 (citing <u>T & S Enters.</u>, 11 So.3d at 413).

Here, the parties do not dispute that there is an actual conflict between the relevant New York and Florida laws. Likewise, there is no dispute that the laws at issue are properly characterized as loss-allocating. As it is undisputed that a conflict exists, and that the relevant laws are loss-allocating, I must determine the domiciles of each party in order to apply the rules set forth in <u>Neumeier</u>.

### 2. Domiciles of the Parties

"Determining a person's domicile is a mixed question of law and fact reserved for the Court." <u>Hidalgo v. City of New York</u>, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015); <u>Katz v. Goodyear Tire & Rubber Co.</u>, 737 F.2d 238, 243 (2d Cir. 1984) ("In analyzing the propriety of a court deciding a factual issue on a pretrial motion, we distinguish between jurisdictional and nonjurisdictional issues. The question of jurisdiction need not be submitted to a jury."). "New York courts have stressed that residence is distinct from domicile." <u>Antone v. Gen. Motors Corp.</u>, 64 N.Y.2d 20, 29 (1984)). "[R]esidence requires only 'a significant connection with some

locality in the State as the result of living there for some length of time during the course of a year,'" whereas domicile "'requires both a presence in the state and evidence of intent to make the state a permanent home.'"  Youngman, 923 F. Supp. 2d at 420 (quoting Antone, 64 N.Y.2d at 30); Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) ("Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning . . . .") (internal quotation marks & citation omitted). "Thus, the concept of domicile includes both physical presence in a state, along with the intent to remain there."  Richins v. Hofstra Univ., 908 F. Supp. 2d 358, 361 (E.D.N.Y. 2012) (citing Palazzo, 232 F.3d at 42).

A party can have only one domicile at a time, Katz, 737 F.2d at 243, and "the pertinent time for purposes of choice-of-law analysis is the time of the tort rather than any later time," Youngman, 923 F. Supp. 2d at 420 (citing, inter alia, Gore v. Northeast Airlines, Inc., 373 F.2d 717, 722-24 (2d Cir. 1967)).  "Courts take into account a number of factors when considering where a person is domiciled, including a party's 'current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, members in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes.'"  Hidalgo, 2015 WL 1729811, at *2 (quoting Kennedy v. Trustees of Testamentary Trust of Will of Kennedy, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009), aff'd, 406 F. App'x 507 (2d Cir. 2010)).  "Courts also consider 'whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.'" Kennedy, 633 F. Supp. 2d at 81 (quoting Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp.

1224, 1228 (S.D.N.Y. 1991)). "No single factor is determinative, and courts must consider the totality of the evidence." <u>Hidalgo</u>, 2015 WL 1729811, at *2 (internal quotations omitted).

Here, the parties do not dispute that on the date of the accident, Third-party Plaintiffs (Austin, Wray, and Lynn Trucking) were domiciled in Ohio, and Ray's Rapid was domiciled in Georgia. <u>See</u> TPDs' 56.1 ¶¶ 5-8. Plaintiff and Thebaud's domiciles remain up for debate. As such, with the relevant standard in mind, I review the evidence made available in the motions filed to determine Plaintiff and Thebaud's domicile below.

### a. Plaintiff's Domicile

In 1977, Plaintiff immigrated to the United States from Curacao, a Dutch Caribbean island just off the Venezuelan coast. <u>See</u> Plaintiff's Deposition Transcript ("Pl's Tr."), 13:7-16.[5] From approximately 2003 to 2006, Plaintiff resided in Brooklyn, New York. <u>See</u> Pl's Tr., 10:25-11:12. Sometime in 2006, Plaintiff moved to Georgia where he ultimately lived until approximately 2012. <u>See</u> Pl's Tr., 9:22-10:22. In 2007, Plaintiff incorporated Ray's Rapid, a limited liability company specializing in the transport of vehicles up and down the East Coast. <u>See</u> Pl's Tr., 32:13-19; 33:16-20; 35:11-13; 36:17-24; <u>see also</u> TPPs' 56.1 ¶¶ 2-3. Plaintiff was the sole owner of the company, which, according to Plaintiff, dissolved sometime in late 2011 or early 2012.[6] <u>See</u> Pl's Tr., 32:20-25; 33:13-15.

---

[5]     Numerical citations refer to the page and line number of the relevant transcript.

[6]     According to Georgia's Secretary of State's website, Plaintiff registered Ray's Rapid as a limited liability company in 2007 with its principal place of business in Georgia. <u>See</u> https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=1263586&businessType=Domestic%20Limited%20Liability%20Company (last visited on December 8, 2015). Although Plaintiff stated in his deposition that Ray's Rapid dissolved sometime in late 2011 or early 2012, Georgia's Secretary of State's website indicates that the company filed its annual registration in 2012, 2013 and 2015, and that Plaintiff remains its sole owner. <u>Id.</u>

In approximately mid-2012, Plaintiff moved to Queens, New York to live with a friend and has remained there to date.  See Pl's Tr., 5:11-13; 7:3-5.  According to the Complaint in this action, as of the time of its filing in February 2013, Plaintiff resided in Queens, New York.  See Complaint, ECF No. 1, ¶ 1.  As of late 2014, Plaintiff maintained a commercial driver's license from Georgia, which on its face, indicates that he resides in the issuing state.  See TPDs' Aff., ECF No. 41, Attachment #2, Exhibit K.  Most significantly, in 2010 and 2011, Plaintiff filed federal tax returns listing Georgia as his home.  See TPDs' Aff., ECF No. 41, Attachment #2, Exhibit H.

Although Plaintiff subjectively claims that he was domiciled in New York at the time of the accident, this is insufficient to establish that New York was his domicile in the face of his tax returns which state, under the penalty of perjury, that Georgia was his home in 2011, thus "clearly and convincingly demonstrat[ing] his presence in the state and evidence of intent to make the state a permanent home."  Youngman, 923 F. Supp. 2d at 422 (finding plaintiff's tax returns decisive when determining domicile for choice-of-law analysis); see Willis v. Westin Hotel Co., 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.").  In fact, not only do Plaintiff's tax returns suffice to establish his domicile, they likewise estop Plaintiff from arguing to the contrary, as "[a] party to a litigation may not take a position contrary to a position taken in an income tax return."  Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc., 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) (quoting Mahoney-Buntzman v. Buntzman, 12 N.Y.3d 415, 422 (2009)); see Armstrong v. Collins, 2010 WL 1141158, at *31 (S.D.N.Y. Mar. 24, 2010) (collecting cases).

As such, at the time of the motor vehicle accident, Plaintiff was domiciled in Georgia.

### b. Thebaud's Domicile

Sometime in the 1980s, Thebaud immigrated to the United States from Haiti, and obtained an associate's degree from Royal Business School, located in Queens, New York, in approximately 1988.  <u>See</u> Thebaud's Deposition Transcript (Thebaud Tr."), 9:18-21, 19:17-20:8. In 2008, Thebaud acquired a Georgia commercial driver's license, which remains valid to date. <u>See</u> Thebaud Tr., 19:3-16.  That same year, in Georgia, Thebaud incorporated Auto Craft Transport, a limited liability company specializing in the transport of vehicles.  <u>See</u> Thebaud Tr., 15:14-17:10.  Thebaud is the sole owner of the company, which is located in Georgia and New York, although its principal place of business is in Georgia.  <u>See</u> Thebaud Tr., 15:14-17:10. Following the March 2011 accident, Thebaud sought, and received, medical treatment – including physical therapy – from several Georgia health providers.  <u>See</u> Thebaud Tr., 77:23-78:7; 80:24-85:22.

In February 2013, Thebaud filed a separate lawsuit in this district against Austin, Wray and Lynn Trucking, claiming injuries as a result of the same motor vehicle accident at issue in this litigation.  <u>See</u> Docket 13 CV 1071 (E.D.N.Y.), Complaint, ECF No. 1.  In Thebaud's Complaint, he asserted that he was a resident of New York.  <u>See</u> Docket 13 CV 1071 (E.D.N.Y.), Complaint, ECF No. 1, ¶ 1.  In contrast, in his Answer to the Third-party Complaint in this litigation, which was filed in October 2013, Thebaud acknowledged that he was a resident of Georgia.  <u>See</u> TPDs' 56.1 ¶ 3; ECF No. 17, ¶ 3.  At his deposition in this matter, which was held

in October 2014, Thebaud testified that he has resided at his parents' home in New York for approximately thirty years.  See TPPs' 56.1 ¶ 21.[7]

Like Plaintiff, I must conclude that Thebaud was domiciled in Georgia at the time of the motor vehicle accident.  As of March 2011, Thebaud was living in Georgia, maintained a Georgia commercial driver's license, was employed by Plaintiff's Georgia-based company and owned a vehicle transportation company which had been operating since 2008 and was based therein.  Although Thebaud was living with his sister in Georgia at the time, he owned no property in New York such that his living arrangements should tip the scale in any discernable manner.  The only evidence which arguably supports the belief that Thebaud was domiciled in New York – his deposition testimony and his filing of a lawsuit in this district several years after the accident – is subjective and self-contradictory.  Thebaud testified at his deposition that he resided in New York for the prior thirty years, which is clearly untrue as he spent, at a minimum, several years in Georgia operating his company.  Similarly, he admitted in his Answer to the Third-party Complaint filed in this action that he, in fact, was a resident of Georgia.  See ECF No. 17, ¶ 3.

In light of the above, I find Thebaud to have been a Georgia domiciliary on the date of the motor-vehicle accident.

---

[7]     The Court held a conference on December 15, 2015, during which Third-party Defendants' counsel stated that service of the Third-party Complaint had also been effectuated on Thebaud in Georgia.  See December 15, 2015 Conference Transcript ("12/15/2015 Tr."), ECF No. 47, 18:15-19.  The Court could not confirm the accuracy of this statement, however, because the affidavit of service filed on the docket indicates that Thebaud was served in New York.  See ECF No. 14.

### 3. Whether New York or Florida law governs

When choosing between the conflicting loss-allocation laws of states, a court sitting in diversity jurisdiction in New York must apply the analysis set forth in Neumeier "by considering the parties' respective domiciles, the relevant conduct[] and the purposes of the applicable substantive law." Youngman, 923 F. Supp. 2d at 419 (citing Padula, 84 N.Y.2d at 522; Lee, 166 F.3d at 545). Under Neumeier, a court should apply one of three different approaches based on the parties' domiciles:

> The first applies when the parties are domiciled in the same state, in which case the law of the state of the common domicile applies. The second rule applies when the parties are domiciled in different states and the law of each state is favorable to its respective litigant. In that case, the law of the place where the tort occurred applies. The third Neumeier rule applies to all other split-domicile scenarios[,] [where] [t]he law of the state where the tort occurred presumptively controls, except where displacing the law of the place of the tort will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

Antaeus Enters., Inc. v. SD-Barn Real Estate, LLC, 480 F. Supp. 2d 734, 742-43 (S.D.N.Y. 2007) (internal alterations & citations omitted); see Neumeier, 286 N.E.2d at 457; Cooney v. Osgood Mach., Inc., 612 N.E.2d 277, 281-82 (1993).

Although not raised by the parties herein, there is additional wrinkle to the choice-of-law analysis. All of the parties advocate for a blanket determination that either New York or Florida's loss allocation laws apply, but none considers whether different laws should apply to each claim made by each party. As the New York Court of Appeals has stated, "the correct way to conduct a choice-of-law analysis is to consider each plaintiff vis-à-vis each defendant." Edwards v. Erie Coach Lines Co., 17 N.Y.3d 306, 329 (2011). In other words, it is possible to apply one state's laws to Plaintiff's claims against Defendants/Third-party Plaintiffs and another

state's laws to the claims made by Defendants/Third-party Plaintiffs against Third-party Defendants.  See Edwards, 17 N.Y.3d at 330-31 (applying Ontario's loss allocating statute to claims made by Plaintiff against Defendants and New York's loss allocating statute to claims by Defendants/Third-party Plaintiffs against Third-party Defendants).  As such, rather than make a determination that either New York or Florida law applies wholesale, the Court will analyze the original action and third-party action separately.  See Tkaczevski v. Ryder Truck Rental, 22 F. Supp. 2d 169, 172 (S.D.N.Y. 1998) ("Choice of law is not determined in toto for an entire litigation but must be analyzed as to each claim in an action."); Schultz v. Boy Scouts of America, 65 N.Y.2d 189 (1985) (performing the Neumeier analysis on a party-by-party basis).

As it stands, the parties' domiciles at the time of the March 2011 accident are as follows:

**Original Action**

| Party | Domicile |
|---|---|
|  |  |
| Plaintiff | Georgia |
| Defendants/Third-party Plaintiffs | Ohio |

**Third-party Action**

| Party | Domicile |
|---|---|
|  |  |
| Defendants/Third-party Plaintiffs | Ohio |
| Third-party Defendants (including Thebaud) | Georgia |

"As the parties [in the original and third-party actions, respectively,] are not domiciliaries of the same state and as neither is a domiciliary of the state where the tort occurred, the court must consider the conflicting comparative negligence laws here under the third step of the Neumeier analysis." O'Brien v. Marriot Int., Inc., 04 CV 3369 (VVP), 2006 WL 1806567, at *4 (E.D.N.Y. June 29, 2006).

The third <u>Neumeier</u> rule "presumes application of the law of the situs as a default,"

<u>Tkaczevski</u>, 22 F. Supp. 2d at 173; <u>see</u> <u>Cooney</u>, 612 N.E.2d at 281-82 (noting that the third

<u>Neumeier</u> rule "generally uses the place of injury, or locus, as the determining factor"), unless it

appears that "displacing [the] normally applicable rule will advance the relevant substantive law

purposes of the jurisdictions involved." <u>Neumeier</u>, 286 N.E.2d at 458 (internal quotations

omitted); <u>see also</u> <u>Gilbert v. Seton Hall Univ.</u>, 332 F.3d 105, 111 (2d Cir. 2003) ("A primary

reason that locus of the tort tips the balance, of course, is that ordinarily it is the place with which

both parties have voluntarily associated themselves."). Although it is true that "New York courts

have generally recognized that when considering conflicting loss-allocating rules . . . the locus

jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the

remedy," <u>O'Brien</u>, 2006 WL 1806567, at *4, none of the parties in either the original action or

third-party action was domiciled in New York.

Admittedly, this is an uncommon circumstance. Typically, when choice-of-law issues

arise, parties tend to seek the application of law from either the site of the tort, or one of the

parties' domiciles. Here, though, Plaintiff and Third-party Plaintiffs argue for the application of

law from a state which has no connection to, and thus no interest in, any of the parties, at least

during the relevant time frame.[8] See <u>McDuffie v. Wilner</u>, 415 F. Supp. 2d 412, 422 (S.D.N.Y.

---

[8]     This decision may adversely affect Plaintiff, who – depending on the outcome of the trial
– may not be able to recover the entirety of his damages, but this is arguably the result of
declining to sue Plaintiff's own company (Ray's Rapid) or his driver (Thebaud), who worked for
Plaintiff's company, or of filing this lawsuit in this venue. See 28 U.S.C. § 1391(b) (a civil
action wherein jurisdiction is founded on diversity of citizenship may be brought only in: (1) a
judicial district where any defendant resides, if all defendants reside in the same State; (2) a
judicial district in which a substantial part of the events or omissions giving rise to the claim
occurred; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the
time the action is commenced, if there is no district in which the action may otherwise be
brought). Here, the original Defendants (<u>i.e.</u>, Third-party Plaintiffs) are residents of Ohio, and
the event which gives rise to the claim (<u>i.e.</u>, the motor vehicle accident) occurred in Florida. As

2006) ("New York has no interest in the loss allocation in this case since no party is domiciled in New York."). Accordingly, for purposes of the trial, the Court will apply Florida's loss-allocating statute to Plaintiff's and Third-party Plaintiffs' actions.[9]

## IV. CONCLUSION

For the reasons stated above, Third-party Defendants' motion for summary judgment is **denied**, but Third-party Defendants' motion in limine seeking a declaration that Florida's loss-allocating statute applies is **granted**.[10]

In light of the Court's holding, the trial previously scheduled to commence on January 11, 2016 is postponed sine die. Moreover, as discussed in greater detail during the December 15, 2015 conference, to the extent Plaintiff seeks to amend the Complaint, the parties are directed to

_____

such, this lawsuit likely could have been brought in one of those two states, rather than New York.

[9]     During the December 15, 2015 conference, see n.7, supra, the Court suggested to the parties that Florida's loss-allocating statute may apply, see 12/15/2015 Tr., ECF No. 47, 7:12-22; 23:22-24:1, and asked for the parties' views on how the case should proceed if that were to be the case. In response, Plaintiff's and Defendants/Third-party Plaintiffs' counsel briefly mentioned the possible application of Ohio law. See 12/15/2015 Tr., 3:2-10, 4:12-20. This suggestion comes too late. Plaintiff and Defendants/Third-party Plaintiffs were on notice that Florida law may apply in August 2015, at the latest, when the parties filed their proposed Joint Pre-trial Order, which raised the question of the application of Florida law. See ECF No. 34, pp. 5-7. Despite this, neither party advocated for Ohio law in its opposition papers, which eliminates the need for the Court to consider Ohio law when performing the choice-of-law analysis. See Youngman, 923 F. Supp. 2d at 420 n. 4; Luizzi v. Pro Transport, Inc., 02 CV 5388 (CLP), 2010 WL 3023928, at *12 (E.D.N.Y. Aug. 2, 2010). Therefore, as the Court explained during the conference, see 12/15/2015 Tr., 5:4-6, Plaintiff and Defendants/Third-party Plaintiffs have waived their right to argue in favor of the application of Ohio law, to the extent they ever intended to do so.

[10]     In their motion papers, Third-party Plaintiffs raise the possibility of treating Third-party Defendants as "Fabre" non-parties should Florida law apply. See Fabre v. Marin, 623 So. 2d 1182 (Fla. 1993); see also Jackson County Hospital v. Aldrich, 835 So.2d 318 (Fla. 2002). Although the Court has now determined that Florida's loss-allocating statute applies, it reserves decision on whether Third-party Defendants should be included on the verdict sheet as the parties did not all have an opportunity to brief the issue. The parties may raise this issue again during the final pre-trial conference.

comply with the briefing schedule discussed therein.  <u>See</u> ECF No. 46.  As discussed, any such motion must address, <u>inter</u> <u>alia</u>, the timeliness of Plaintiff's claims, the relation-back doctrine, any prejudice to any party by the timing of the motion, any relevant insurance-related concerns, whether the amendment destroys diversity jurisdiction, and the domiciles/residences of the parties at the time of the filing of the action.

Dated:  Brooklyn, New York
       December 21, 2015

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge
